**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE HARTFORD FINANCIAL SERVICES GROUP, INC., RAMANI AYER, THOMAS M. MARRA, DAVID M. JOHNSON and LIZABETH H. ZLATKUS, <br><br> Defendants. | Electronically Filed <br><br> Civil Action No. 1:10-cv-2835-NRB <br><br> (ECF Case) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARCA S.G.R. S.p.A. FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF <u>LEAD COUNSEL AND LIAISON COUNSEL</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT .................................................................................................................................4

I.  ARCA SHOULD BE APPOINTED LEAD PLAINTIFF .....................................................4

    A.  Procedural Requirements According to the PSLRA.................................................4

    B.  Arca is the "Most Adequate Plaintiff" .....................................................................5

        1.  Arca Has Made A Timely Motion For Its Appointment
            As Lead Plaintiff ..........................................................................................5

        2.  Arca Believes That It Has the Largest Financial Interest
            in the Relief Sought By the Class ................................................................6

        3.  Arca Satisfies The Applicable Requirements Of Rule 23 ..........................6

            a.  Arca Fulfills The Typicality Requirement .......................................7

            b.  Arca Fulfills The Adequacy Requirement .......................................7

        4.  Arca Is The Prototypical Lead Plaintiff Envisioned By The PSLRA..........8

II. THE COURT SHOULD APPROVE ARCA'S SELECTION OF COUNSEL...................9

CONCLUSION..............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................5, 6, 8

*Reimer v. Ambac Fin. Group, Inc.*,
   No. 08-411, 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ..........................5, 6, 7, 9

*Shi v. Sina Corp.*,
   No. 05-2154, 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) .................................7, 8

*Sofran v. Labranche & Co., Inc.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ..........................................................................................7

*Vladimir v. Bioenvision, Inc.*,
   No. 07- 6416, 2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) .................................6

**STATUTES**

15 U.S.C. § 78u-4(a)(3) ...............................................................................................................4

15 U.S.C. § 78u-4(a)(3)(A)(i) .....................................................................................................4

15 U.S.C. § 78u-4(a)(3)(A),(B) ...................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B) .........................................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................................................9

**RULES**

Fed. Rule Civ. P. 6(a)(1)(C) ........................................................................................................5

Fed. Rule Civ. P. 23(a) ................................................................................................................7

**PRELIMINARY STATEMENT**

Arca S.G.R. S.p.A. ("Arca" or "Movant") respectfully moves this court for an Order: (1) appointing Arca as Lead Plaintiff in this and any subsequent matters deemed related by the Court pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "PSLRA"); (2) approving Arca's selection of the law firm of Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as Lead Counsel; (3) approving Arca's selection of the Law Offices of Curtis V. Trinko, LLP ("Trinko Law Offices") as Liaison Counsel; and (4) granting such other relief as the Court may deem just and proper.

The above-captioned action is a securities class action lawsuit brought on behalf of all purchasers of The Hartford Financial Services Group, Inc. ("The Hartford" or the "Company") common stock between December 10, 2007 and February 5, 2009 (the "Class Period") against The Hartford and certain of its officers and directors for violations of the Exchange Act. Having suffered losses totaling approximately $1,921,711 as a result of its investments in The Hartford common stock during the Class Period, Arca – a sophisticated institutional investor – believes it has suffered the largest financial loss of any other movant seeking appointment as lead plaintiff in the matter and, as such, has the largest financial interest in the outcome of this litigation. Arca also meets the applicable typicality and adequacy requirements of Rule 23 of the Federal Rules of Procedure ("Rule 23"). In addition, Arca has submitted a sworn certification signed by Dr. Atillio Piero Ferrari, its Managing Director, demonstrating its desire to serve as lead plaintiff in this action and its understanding of the attendant duties and obligations of serving as such. *See*

Trinko Decl. at Exhibit A.[1]  Thus, as the presumptive "most adequate plaintiff" as determined by the PSLRA, Arca respectfully requests that its motion be granted and that it be appointed Lead Plaintiff, and its selection of Lead Counsel and Liaison Counsel be approved.

## FACTUAL BACKGROUND

The Hartford is one of the largest investment and insurance companies in the United States, providing investment products – variable annuities, mutual funds, college savings plans – as well as life insurance, group and employee benefits, automobile and homeowners' insurance, and business insurance.[2]  As a financial services company, The Hartford's capital position is critical in maintaining its credit rating and high regulatory risk-based capital ("RBC"). Both measures are important security for corporations and individuals evaluating insurance coverage which may become payable years into the future. Rating agencies and state insurance regulators develop factors representing the riskiness of various components of an insurer's assets and liabilities.  These factors, multiplied by the components of the balance sheet, establish a minimum level of capital.

Throughout the Class Period, defendants repeatedly represented that The Hartford's capital position was "sound" and in "great shape" and that its "capital strength" would allow it to "navigate the market cycles" and maintain its credit rating.  The basis of The Hartford's stability was purported to be its investment in instruments that the Company likened to be no more risky

---

[1] Movant's sworn certification documenting its transactions pursuant to the federal securities laws is attached as Exhibit A to the Declaration Of Curtis V. Trinko In Support Of The Motion Of Arca S.G.R. S.p.A. For Appointment As Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Lead Counsel And Liaison Counsel (the "Trinko Decl.").

[2] Unless otherwise noted, facts are taken from the class action complaint filed in *City of Monroe Employees' Ret. Sys. v. The Hartford Fin. Servs. Group, Inc., et al.*, No. 10-cv-2835 (S.D.N.Y. filed March 31, 2010).

than "corporate bonds." However, while defendants were assuring the market that The Hartford's capital position was sound, they were taking massive risks by investing heavily in toxic low quality residential and commercial mortgage-backed securities and significantly increasing their exposure to losses by attempting to mimic the return on these and other low quality assets through credit default swap contracts ("CDS").

Defendants also engaged in a securities lending program throughout the Class Period. However, rather than invest the collateral from the program in safe investments, the defendants caused The Hartford to invest the cash collateral it received in highly risky investments, including residential and commercial mortgage-backed securities– low quality assets in thinly traded markets which incurred massive losses. Eventually, The Hartford was forced to pay back the cash collateral it held in exchange for the securities when such securities were returned, eroding its regulatory capital position.

When Lehman Brothers, a counterparty to many of Hartford's speculative trading contracts collapsed in September 2008, The Hartford's true financial condition slowly began to surface. Rather than possessing a stable balance sheet capable of withstanding a serious economic downturn, disclosures after September 2008 exposed Hartford as being overly exposed to toxic assets. By the end of September 2008, reports surfaced questioning Hartford's solvency and suggested that the Company was on the verge of collapse.[3] On October 6, 2008, the Company reported that it would receive an infusion of capital from Allianz SE, a German insurer, which invested $2.5 billion with The Hartford. A portion of this investment replaced the

---

[3] Carl Gutierrez, "Vultures Circling Hartford Financial," *Forbes.com* (Sept. 30, 2008)("Hartford Financial Services' investors' knees buckled under fears that it could be the next financial firm to collapse").

3

$1 billion that The Hartford had spent repurchasing shares earlier in the year in order to prop up its stock price. On October 18, 2008, Moody's placed The Hartford's ratings on review for possible downgrade. On October 29, 2008, Hartford released its third quarter 2008 results and reported a net loss of $2.6 billion and a net realized capital loss of $2.2 billion. On November 17, 2008, *The Associated Press* published an article entitled "Hartford Financial down on variable annuity worry," which stated that the Company would seek "TARP" funds from the federal government. By the end of 2008, Harford's net capital loss for the year ballooned to ***$3.6 billion***.

Corrective events revealing the falsity of the defendants' Class Period statements caused the Company's stock to fall from $40.99 per share on September 30, 2008 to $12.68 per share on February 6, 2009. The corrective disclosures removed the inflation from The Hartford's stock price, causing real economic loss to investors who had purchased the stock during the Class Period. Following the announcement of Hartford's 2008 losses on February 5, 2009, the Company began to distance itself from its top executives by announcing the departures of Thomas M. Marra (COO) and later Ramani Ayer (CEO).

## ARGUMENT

**I.    ARCA SHOULD BE APPOINTED LEAD PLAINTIFF**

### A.    Procedural Requirements According To The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff in securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action

4

published a notice on *Business Wire* on March 31, 2010, advising putative class members of their right to move the Court to serve as lead plaintiff by June 1, 2010. *See* Trinko Decl. at Exhibit B. Within 60 days after publication of the required notice, any member of the proposed class may file a motion with the Court seeking to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A),(B).

Next, under the provisions of the PSLRA, the Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The PSLRA provides that the Court is to presume that the "most adequate plaintiff" is the class member that: (1) has either filed the complaint or moved for lead plaintiff in response to a notice; (2) has the largest financial interest in the relief sought; and (3) satisfies the typicality and adequacy requirements of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Reimer v. Ambac Fin. Group, Inc.*, No. 08-411, 2008 U.S. Dist. LEXIS 38729, at *5-6 (S.D.N.Y. May 9, 2008); *Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007). Here, Arca meets all the requirements to be the presumptive "most adequate plaintiff."

    B.    **Arca Is The "Most Adequate Plaintiff"**

        1.    **Arca Has Made A Timely Motion For Its Appointment As Lead Plaintiff**

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, Arca timely moves this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members in the above-captioned action and any additional actions deemed to be related by this Court. *See* 15 U.S.C. § 78u-4(a)(3)(A),(B); Fed. Rule Civ. P. 6(a)(1)(C).

        2.    **Arca Believes That It Has The Largest Financial Interest In the Relief Sought By The Class**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the statutory presumption is that the "most adequate plaintiff" is the class member who "has the largest financial interest in the relief sought

5

by the class" that also satisfies the applicable requirements of Rule 23.  In determining the largest financial interest, courts typically consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *See Reimer*, 2008 U.S. Dist. LEXIS 38729, at *10.  The size of the approximate financial loss carries the greatest weight in determining which movant has the largest financial interest.  *Kaplan*, 240 F.R.D. at 93 (finding the loss number to be the "most significant factor" in determining the movant with the largest financial interest).  During the Class Period, Arca purchased 75,629 shares (44,205 net shares) and expended net funds of $2,294,359 on those purchases.  As illustrated in the loss calculations submitted with its motion, utilizing the two most common methods to determine a movant's financial interest under the PSLRA, either the First-In, First-Out ("FIFO") methodology or Last-In, First Out ("LIFO") methodology, Arca suffered a loss of $1,921,711 on its investments in The Hartford.  *See, e.g., Vladimir v. Bioenvision, Inc.*, No. 07 -6416, 2007 U.S. Dist. LEXIS 93470, at *18 (S.D.N.Y. Dec. 21, 2007) ("To determine a class member's approximate losses in the context of securities class actions, courts employ two accounting methods:  First-In-First-Out ('FIFO') and Last-In-First-Out ('LIFO')."); *see also* Trinko Decl. at Exhibit C.  Accordingly, Arca believes that it has the largest financial interest of any lead plaintiff candidate before the Court and thus, should be appointed Lead Plaintiff.

### 3. Arca Satisfies The Applicable Requirements Of Rule 23

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See also See Reimer*, 2008

U.S. Dist. LEXIS 38729, at *12.  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Sofran v. Labranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004).

Although Rule 23 consists of four requirements, the Court need only consider the Rule's "typicality" and "adequacy" prongs for purposes of appointing lead plaintiff.  *See Reimer*, 2008 U.S. Dist. LEXIS 38729, at *12; *Shi v. Sina Corp.*, No. 05-2154, 2005 U.S. Dist. LEXIS 13176, at *7 (S.D.N.Y. July 1, 2005).  As detailed below, Arca satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a. Arca Fulfills The Typicality Requirement

The typicality requirement under Rule 23 is satisfied if the movant's claims "'arise from the same conduct from which the other class members' claims and injuries arise.'"  *Id.* (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*,182 F.R.D. 42, 50 (S.D.N.Y. 1998)).  Here, Arca satisfies the typicality requirement because, just like all other class members, it: (1) purchased or otherwise acquired The Hartford common stock during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation recreated by the defendants' conduct causing the price of The Hartford's securities to collapse.  *See Reimer*, 2008 U.S. Dist. LEXIS 38729, at *12.

### b. Arca Fulfills The Adequacy Requirement

Arca also satisfies the adequacy requirement of Rule 23 which requires that the representative party "fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B). Specifically, the adequacy requirement is fulfilled when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94; *see also Shi*, 2005 U.S. Dist. LEXIS 13176, at *9. Arca satisfies all of these elements and therefore, meets the adequacy requirement of Rule 23. First, as explained below, Arca has selected two highly qualified firms with significant experience prosecuting class action lawsuits under the federal securities laws to serve as lead and liaison counsel for the class. *See infra,* at Section II. Second, there is no conflict between Arca and the class. Both Arca and the class seek to recover losses caused by the defendants' fraud. Furthermore, Arca, with losses of $1,921,711 on its Class Period transactions in The Harford common stock, has a substantial financial interest in this action and is committed to vigorously advocating the class members' claims, as evidenced by its sworn certification. *See* Trinko Decl. at Exhibits A, C.

    **4.**    **Arca Is The Prototypical Lead Plaintiff Envisioned By The PSLRA**

In addition to satisfying the preliminary requirements of Rule 23, the appointment of Arca as Lead Plaintiff also fulfills a critical legislative goal behind enacting the PSLRA – to encourage sophisticated institutions with large financial interests to serve as Lead Plaintiff in securities class actions. *See Shi*, 2005 U.S. Dist. LEXIS 13176, at *15 (noting that several courts "have understood [the PSLRA] to favor large institutional investors as lead plaintiff" (internal quotation omitted)). Arca is a Milan based institutional investor with approximately $26 billion in assets under management. Indeed, Arca's sophistication assures the class that it can (and will)

8

adequately litigate this action and supervise class counsel. Thus, Arca is clearly a suitable – and indeed preferred – Lead Plaintiff.

## II. The Court Should Approve Arca's Selection of Counsel

Pursuant to the PSLRA, the party selected to serve as lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Reimer*, 2008 U.S. Dist. LEXIS 38729, at *23. In that regard, Arca has selected and retained Barroway Topaz to serve as Lead Counsel for the Class and the Trinko Law Offices to serve as Liaison Counsel for the Class. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. *See* Trinko Decl. at Exhibits D & E.

Barroway Topaz has specialized in prosecuting complex class action litigation for over twenty years and has emerged as one of the preeminent law firms in its field. Barroway Topaz is currently serving as Lead or Co-Lead Counsel in several high profile securities class actions and has represented defrauded investors in numerous class actions recovering billions of dollars for injured class members. Indeed, Barroway Topaz served as Co-Lead Counsel in the *In re Tyco International Ltd. Securities Litigation*, No. 02-266-PB (D.N.H.), procuring a settlement valued at $3 billion – one of the largest securities class actions settlements in United States history. *See* Trinko Decl. at Exhibit D. In addition, Barroway Topaz is currently serving as Co-Lead Counsel in several high profile securities class actions that are pending in this District, including: *In re Bank of America Corp. Securities Litigation*, No. 09-md-2058; *In re UBS Securities Litigation*, No. 07-cv-11225; and *Operative Plasters & Cement Masons International Association Local 262 Annuity Fund v. Lehman Brothers Holdings, Inc.*, No. 08-cv-05523. In addition, the Trinko Law

9

Offices have significant experience in the areas of securities and complex litigation and are well qualified to perform the duties of Liaison Counsel.  See Trinko Decl. at Exhibit E.  Thus, the Court can be assured that by granting this motion, the proposed class will receive the highest caliber of legal representation.

Because there is nothing to suggest that Movant or its counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses – which is the *only* evidence that can rebut the presumption of adequacy under the PSLRA – this Court should appoint Arca as Lead Plaintiff and approve its selection of Barroway Topaz as Lead Counsel for the Class and the Trinko Law Offices as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Arca respectfully requests that the Court: (1) appoint Arca as Lead Plaintiff pursuant to the PSLRA; (2) approve Arca's selection of Barroway Topaz to serve as Lead Counsel for the Class; and (3) approve Arca's selection of the Trinko Law Offices to serve as Liaison Counsel for the Class.

Dated:  June 1, 2010                                   Respectfully submitted,

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

By:     */s Curtis V. Trinko*
Curtis V. Trinko
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: (212) 490-9550
Fax: (212) 986-0158
*Proposed Liaison Counsel*

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Sean M. Handler
Darren J. Check
Naumon A. Amjed

280 King of Prussia Road
Radnor, PA 19087
Tel:    (610) 667-7706
Fax:    (610) 667-7056
*Proposed Lead Counsel*

11