```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

CITY OF MONROE EMPLOYEES'
RETIREMENT SYSTEM, individually and
on behalf of all others similarly
situated,
                        Plaintiff,         MEMORANDUM AND ORDER

            - against -                    10 Civ. 2835 (NRB)

THE HARTFORD FINANCIAL SERVICES
GROUP, INC., RAMANI AYER, THOMAS M.
MARRA, DAVID M. JOHNSON, and
LIZABETH H. ZLATKUS,
                        Defendants.


------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This action is brought against The Hartford Financial Services Group, Inc. ("The Hartford") and four of its high level executives[1] on behalf of a purported class of investors who purchased shares in The Hartford between December 10, 2007 and February 5, 2009, the class period.[2] Five sets of investors each filed motions seeking to be appointed as lead plaintiff and for

---

[1] The Hartford is one of the largest investment and insurance companies in the United States, providing a variety of investment products, as well as life insurance, group and employee benefits, automobile and homeowners' insurance, and business insurance. Complaint, ¶ 2. Defendant Marra is the former President and Chief Operating Officer of The Hartford, and Defendant Ayer was the Chairman and Chief Executive Officer. Complaint, ¶ 33. Defendant Johnson is the former Executive Vice President of The Hartford, while Defendant Zlatkus is the current Executive Vice President and CFO. Complaint, ¶¶ 43-44.
[2] All movants agree that the class period runs from December 10, 2007 through February 5, 2009.

their attorneys to be appointed as lead counsel. These include: (1) Birmingham Plumbers and Steamfitters Local 91 Pension Trust ("Birmingham Plumbers"); (2) Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters"); (3) Stichting Philips Pensioenfonds and State Universities Retirement System of Illinois ("Stichting-SURSI"); (4) Arca S.G.R. S.p.A. ("Arca"); and (5) Arkansas Teacher Retirement System ("Arkansas Teacher"). Since their initial motions were filed, however, Birmingham Plumbers and Oklahoma Firefighters have indicated that they do not oppose the appointment of another movant with a more significant financial interest, and Arca has withdrawn its motion for appointment as lead plaintiff.[3] These three movants did not approach the loss amounts of the two remaining movants: Stichting-SURSI and Arkansas Teacher.[4] For the reasons set forth below, we appoint Arkansas Teacher as lead plaintiff and reserve decision on the appointment of lead counsel.

---

[3] In its notice of withdrawal, Arca noted its support for the motion of Arkansas Teacher based on its view that Arkansas Teacher has the largest financial interest in the litigation.

[4] An examination of the movants' papers reveals that Stichting-SURSI and Arkansas Teacher purchased significantly more shares of The Hartford stock and sustained significantly greater losses than any of the other three movants during the class period. See Declaration of Deborah Clark-Weintraub [on behalf of Birmingham Plumbers], Exh. B (asserting loss of $103,654 using either method of loss calculation as discussed further below); Declaration of Mitchell M.Z. Twersky in Support of Oklahoma Firefighters Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, Exh. C (asserting loss of $706,357 using the LIFO method, $747,309 using the FIFO method); Declaration of Curtis V. Trinko in Support of the Motion of Arca S.G.R. S.p.A. for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, Exh. C (asserting loss of $1,921,711 using either method).

**DISCUSSION**

I.  **The PSLRA**

The PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members," also described as the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  Within 90 days of the notice required under subparagraph (A)(i) of this section, "the court shall consider any motion made by a purported class member in response to the notice."  Id.  In this case, the required notice was published on March 31, 2010.  The motions were timely filed and were fully briefed on June 29, 2010.

In addition, the PSLRA establishes a rebuttable presumption that "the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that":  (1) has either filed the complaint or made a motion in response to the publication of notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Id.  § 78-u4(a)(3)(B)(iii)(I).  This presumption may be rebutted by proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or instead is subject to "unique defenses" that

3

render the plaintiff incapable of adequately representing the class. Id. § 78-u4(a)(3)(B)(iii)(II). The party chosen as the most adequate plaintiff may then retain counsel to represent the class, subject to court approval. Id. § 78-u4(a)(3)(B)(v).

## II. The Proposed Lead Plaintiffs

### A. The Presumptive Lead Plaintiff

#### 1. Timely Complaints and Motions

All of the class members seeking appointment as lead plaintiff meet the first requirement in that they have filed complaints or submitted motions for lead plaintiff status in a timely manner. Accordingly, we turn to the second requirement and assess which movant has the largest financial interest in the action.

#### 2. Largest Financial Interest

The PSLRA is not explicit as to the methodology courts are to use in determining which plaintiff has the largest financial interest in the relief sought by the class, and the Second Circuit has not definitively ruled on the proper method. While disputes remain as to the proper methodology, courts in this Circuit have applied a four factor test, as first set forth in Lax v. First Merchants Acceptance Corp., Nos. 97 Civ. 2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These factors include: (1) the total number of shares purchased during

the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (adopting the four-factor "Lax test"); see also In re Orion Securities Litig., No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (relying on Lax test factors). Although courts have differed on how much weight to assign to each of the Lax factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant. Reimer v. Ambac Financial Group, Inc., Nos. 08 Civ. 411 (NRB) et al., 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007); see Weiss v. Friedman, Billings, Ramsey Group, Inc., No. 05 Civ. 4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of [the Lax test] elements") (quoting In re Vicuron Pharm. Inc. Sec. Litig., 225 F.R.D. 508, 510-11 (E.D.Pa. 2004)); see also Takara Trust v.

Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) (in determining the largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses").

The only parties currently advocating for their selection as lead plaintiff are Stichting-SURSI and Arkansas Teacher. These movants disagree as to two aspects of the assessment of greatest total loss. First, Stichting-SURSI argues that their losses should be aggregated for purposes of the loss analysis here because they bring this motion jointly. It is undisputed that without aggregation neither Stitching nor SURSI suffered a greater loss than Arkansas Teacher, regardless of how the loss is calculated. Second, Stichting-SURSI and Arkansas Teacher dispute the proper methodology for measuring the loss amount. Stichting-SURSI argues that losses should be measured using a FIFO, or "first in, first out," analysis, while Arkansas Teacher suggests that district courts in this Circuit most frequently apply LIFO, or the "last in, first out" methodology. Perhaps unsurprisingly given these arguments, Stichting-SURSI's losses are larger than Arkansas Teacher's when FIFO is applied, but smaller when LIFO is applied.

**a) Aggregation**

The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the

6

determination of lead plaintiff in favor of large institutional investors. See Rozenboom v. Van Der Moolen Holding, N.V. et al., No. 03 Civ. 8284 (RWS), 2004 WL 816440, at *2 (S.D.N.Y. Apr. 14, 2004)(citing congressional intent to encourage institutional investors to serve as lead plaintiffs). Arkansas Teacher argues that appointment of a single large investor meets this purpose most clearly. While this may be true, we note that the PSLRA does expressly contemplate the selection of a "group of persons" as the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); see also 15 U.S.C. §78u-4(a)(3)(B)(i) (contemplating appointment of "member or members of the purported plaintiff class" as lead plaintiff). Courts are divided as to what types of combinations are sufficient to meet the purposes of the PSLRA, but the only grouping at issue here is the pairing of Stichting and SURSI, two institutional investors of the type that the drafters of the PSLRA sought to encourage be appointed as lead counsel. This type of pairing has been approved by this and other courts, and we see no reason that such a pairing would be counter to the PSLRA. See, e.g. Juliar v. Sunopta, Inc. et al., Nos. 08 Civ. 933 (PAC), et al., 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009)(granting application for lead counsel of "two institutional investors, each with significant losses"); Reimer, 2008 WL 2073931, at *3 (granting lead plaintiff status to grouping of three

7

institutional investors); Rozenboom, 2004 WL 816440, at *4 (citing other courts as presuming that relatively small groups are sufficiently cohesive); Weltz v. Lee, 199 F.R.D. 129, 132 (S.D.N.Y. 2001)(noting that the "majority of courts. . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff" and collecting cases). We also, however, see no reason that joint lead plaintiffs would serve that interest any greater than the appointment of a single, experienced, institutional investor such as Arkansas Teacher.[5]

### b) FIFO v. LIFO methodology

The parties starkly disagree over the proper methodology for measuring the losses suffered by each movant. FIFO, or "first in, first out," and LIFO, or "last in, first out," are both frequently employed methodologies for the purposes of loss calculation in a variety of legal circumstances. In a FIFO analysis, the first stocks to be sold are assumed to be the stocks that were acquired first, often outside of the class period. Because sales matched with pre-class period purchases

---

[5] Stichting-SURSI's arguments to the contrary are rejected. While Stichting-SURSI argues that appointing two investors to serve as the lead plaintiff would allow the two investors to act as a check on one another, we find this outcome no more plausible than a situation where disagreements within the lead plaintiff appointees end up disadvantaging the class. The citation offered by Stichting-SURSI in support of this argument is by no means a searching analysis of the proposition, and is thus unpersuasive. See Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 455 (N.D. Cal. 2002)(discussing the possibility of such a "check" as an afterthought at the conclusion of the opinion). Further, Stichting-SURSI's litany of cases where the sole lead plaintiff was eventually removed will not substitute for an articulated reason why Arkansas Teacher would not adequately represent the interests of the class, which has not been offered.

8

are not included in the calculation of class period losses, any gains or losses from those most recent sales would not be included in the total loss. LIFO, as applied by Arkansas Teacher,[6] assumes that the last stocks to be sold are the stocks purchased most recently prior to that sale. By only matching sales to purchases made prior to the sale, the economic irrationality of matching sales to later-in-time purchases, as emphasized by Stichting-SURSI, is not a concern.

While the PSLRA does not address which method of loss calculation should be employed, courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff. Kuriakose v. Federal Home Loan Mortg. Co., No. 08 Civ. 7281 (JFK), 2008 WL 4974839, at *3 (S.D.N.Y. Nov 24, 2008)(citing Vladimir v. Bioenvision, Inc., No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007)). "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due the inflation of the stock price. FIFO ... may exaggerate losses." In re eSpeed, 232 F.R.D. at 101; see also Kaplan, 240 F.R.D. at 94, n.7.

---

[6] Stichting-SURSI declined the opportunity to submit loss calculations using LIFO, arguing that its application was irrational. Arkansas Teacher has, however, supplied an analysis of Stichting-SURSI's LIFO losses. While continuing to voice its disapproval for the use of the LIFO method, Stichting-SURSI has not challenged Arkansas Teacher's calculations.

Stichting-SURSI argues that, because its sales during the class period were actually at a loss to its purchases prior to the class period, this concern about gains accruing from sales during the class period is not in play. However, as Arkansas Teacher points out, losses or gains on pre-class period holdings are typically not compensable, so should not be a focus of this determination. See Affidavit of Kenneth N. Kotz, ¶ 3, n.4; see also Johnson v. Dana Corp., 236 F.R.D. 349, 352 (N.D. Ohio 2006)(sales matched to pre-existing holdings are excluded from the damage calculation); In re Comdisco Securities Litig., No. 01 C 2110, 2004 WL 905938, at *3 (N.D. Ill. Apr. 26, 2004)(finding LIFO consistent with the proper focus of purchases and sales during the class period). The value of the LIFO analysis is not in comparing gains and losses relative to pre-class period holdings, but rather in accounting for gains made on sales as a result of an allegedly inflated stock price during the class period.

Stichting-SURSI also argues that most settlements in actions such as this employ FIFO, and that applying any method other than FIFO at this stage in the action would be inconsistent. We certainly see the logic in determining which plaintiff has the largest financial stake for purposes of lead plaintiff appointment according to the methodology of measurement that will be employed at the conclusion of the

10

litigation. Further, consistent with this Court's experience, most securities class action cases are resolved by settlement. Stichting-SURSI's authority is in this context of settlement approval where reviewing courts use a different and less searching standard.[7] Thus, to analyze the truly parallel scenario, we must consider what method of loss calculation should be endorsed by the Court if the matter were to proceed to a trial, not simply what methodology would be acceptable if chosen by parties to a settlement. For the reasons stated above, applying LIFO as the measurement after trial would be more appropriate based on the submissions of the parties thus far.

### c) The movants here

As noted above, the only movants at issue are Stichting-SURSI and Arkansas Teacher, and all agree that the class period in this action runs from December 10, 2007 through February 5, 2009. The total number of shares purchased by Stichting-SURSI over the class period is 225,363 shares, though its net number of purchases is 147,103 shares.[8] Declaration of David A. Rosenfeld in Support of the Motion for Stichting Philips and

---

[7] See Fed. R. Civ. Pro. 23(e)(requiring a court that has certified a class to approve any proposed settlement as "fair, reasonable, and adequate"); In re Initial Public Offering Securities Litigation, 260 F.R.D. 81, 117-20 (S.D.N.Y. 2009)(applying nine factors of City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), to determine whether a settlement is "fair, reasonable and adequate" in accordance with Rule 23(e)).

[8] Stichting bought 143,000 shares with net purchases of 98,100 shares, while SURSI bought 82,363 shares with net purchases of 49,000 shares during the class period. Stichting Mem., at 4, n.2.

SURSI as Lead Plaintiff and Approval of Selection of Lead Counsel ("Rosenfeld Dec."), Ex. B, C; Memorandum of Law in Further Support [of Stichting-SURSI's Motion] ("Stichting Mem."), at 4, n.2.  Stichting-SURSI expended net funds of $9,501,146 over the class period.[9]  Stichting Mem., at 4, n.2.  As for the final factor, Stichting-SURSI asserts a FIFO loss of $12,035,368,[10] but did not submit a LIFO calculation.  Id.  As stated above, Arkansas Teacher has submitted an affidavit with its estimation of Stichting-SURSI's LIFO losses, totaling $8,088,302.[11]  Declaration of Alan Ellman in Further Support [of Arkansas Teacher's Motion] ("Ellman Dec."), Exh. 1.

By comparison, Arkansas Teacher bought 251,000 shares and sold 47,900 shares during the class period, resulting in a net purchase of 171,800 shares during the class period.  Id.  Arkansas Teacher's net expenditure over the period was $8,348,168.  Id.  Its approximate losses equal $8,549,102 using LIFO and $9,749,856.56 using FIFO.  Id.

Arkansas Teacher purchased both a greater total and a higher net number of shares during the class period, while Stichting-SURSI expended a higher net amount of funds during the period.  The last factor, however, is the most important in the

---

[9] Stichting expended net funds of $6,605,203 and SURSI expended net funds of $2,895,942.  Stichting Mem., at 4, n.2.
[10] Stichting's FIFO loss was $7,741,750, while SURSI's FIFO loss was $4,293,607.  Stichting Mem., at 4, n.2.
[11] Arkansas Teacher measures Stichting's LIFO loss at $5,638,707, and SURSI's LIFO loss at $2,449,594.  Ellman Dec., Exh. 1.

12

analysis, and the result is different depending on which methodology is used to measure the loss amount during the class period.

Because, (1) consistent with the majority of courts in this district, we find that LIFO is the most accurate measure of actual losses suffered by stockholders in that it takes into account any gains accrued from sales during the class period; and because (2) regardless of the methodology for loss calculation applied, Arkansas Teacher has the greatest individual loss; we find that Arkansas Teacher has suffered the greatest amount of loss of any movant here.  Accordingly, we find that Arkansas Teacher has the greatest financial interest in this litigation and is the presumptive lead plaintiff.

### 3. Rule 23

Finally, we turn to the third requirement for the presumptive lead plaintiff; namely, that the plaintiff meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. As this Court has previously noted, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA." Shi v. Sina Corp., Nos. 05 Civ. 2154 (NRB) et al., 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). Further, at this stage of the litigation, only a preliminary showing of

typicality and adequacy is required.  In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 102 (citation omitted).

The typicality threshold is satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise."  Id.  Arkansas Teacher and the other members of the class claim to have been injured by the overvaluation of The Hartford stock.  The underlying conduct from which the class members' claims arise is the same: alleged misrepresentations on the part of defendants as to The Hartford's business prospects, capital position, and investments.  Thus Arkansas Teacher meets the typicality requirements under Rule 23 for purposes of qualification for lead plaintiff.

The adequacy requirement is satisfied where:  (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.  See id.; Shi, 2005 WL 1561438, at *2 (citation omitted).  Arkansas Teacher has retained two firms to serve as lead counsel:  Labaton Sucharow, a New York firm, and Nix, Patterson, and Roach, LLP ("NPR"), a Texas firm.  Both of these firms appear to be competent and experienced counsel.  Further, Arkansas Teacher's significant

14

financial interest should ensure vigorous advocacy on behalf of the class, and there is no reason to believe that Arkansas Teacher has interests that are adverse to those of the class members. Accordingly, Arkansas Teacher is entitled to the most adequate plaintiff presumption.

**B. The Rebuttal Evidence**

As noted above, the presumption that Arkansas Teacher is the most adequate plaintiff may be rebutted if there is evidence that it will not fairly and adequately protect the interests of the class, or is subject to unique defenses that render it incapable of adequately representing the class. 15 U.S.C. § 78-u4(a)(3)(B)(iii)(II). While Stichting-SURSI has argued that a joint lead plaintiff is preferable to a sole lead plaintiff, and that one lead counsel is preferable to two, no evidence has been offered that would suggest that Arkansas Teacher would either (1) fail to fairly and adequately protect the interests of the class, or (2) be subject to any unique defenses. Thus the presumption that Arkansas Teacher should serve as lead plaintiff is not rebutted.

**IV. Lead Counsel**

As noted above, the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78-u4(a)(3)(B)(v). While the

15

"statute evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention[,]" Kuriakose, 2008 WL 4974839, at *9 (internal quotation omitted), the Court has discretion to decline to appoint the candidate proposed by lead plaintiff when warranted to protect the interests of the class. Id.; Pirelli, 229 F.R.D. at 420, n.37 (citation omitted); see also In re Veeco Instruments Inc. Sec. Litig., 233 F.R.D. 330, 334 (S.D.N.Y. 2005)(approving of lead plaintiff's selection of lead counsel but declining to appoint liaison counsel). While both of the firms retained by Arkansas Teacher appear qualified to serve adequately as lead counsel, Arkansas Teacher provides no justification as to why more than one firm is required in order to serve the best interests of the class. Thus, we direct Arkansas Teacher to, within 10 days of this order, either justify the necessity of appointing two firms as lead counsel in this litigation or to select one firm to serve as the sole lead counsel.

## CONCLUSION

For the aforementioned reasons, we hereby order: (1) that class member Arkansas Teacher is appointed to serve as lead plaintiff in this action, pursuant to section 21D(a)(3)(B)(iii) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4-

16

a(3)(B), as amended by the Private Securities Litigation Act of 1995; (2) that within 10 days, Arkansas Teacher is to either select one firm or provide justification for the appointment of two firms as lead counsel for the class in this action, pursuant to section 21D(a)(3)(B)(v) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4-a(3)(B), as amended by the Private Securities Litigation Act of 1995; and (3) that within 20 days of appointment of lead counsel, lead plaintiff and lead counsel shall submit to this Court any proposed order that would further facilitate their representation of the class.

Accordingly, all motions by competing movants are hereby denied.

**IT IS SO ORDERED.**


Dated:   New York, New York
         July 15, 2010

                                              /s/ Naomi Reice Buchwald
                                              NAOMI REICE BUCHWALD
                                              UNITED STATES DISTRICT JUDGE

17

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

<u>Counsel for Plaintiff City of Monroe Retirement System and Movants Stichting Philips Pensioenfonds and State Universities Retirement System of Illinois</u>

Samuel Howard Rudman
David Avi Rosenfeld
Robbins Geller Rudman & Dowd, LLP(LI)
58 South Service Road
Suite 200
Melville , NY 11747

<u>Counsel for Plaintiff Birmingham Plumbers and Steamfitters Local 91 Pension Trust</u>
Deborah Clark-Weintraub
Whatley, Drake & Kallas, LLC (NYC)
1540 Broadway, 37th Floor
New York, NY 10036

<u>Counsel for Movant Oklahoma Firefighters Pension and Retirement System</u>

Lawrence Donald Levit
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 1910
New York, NY 10119

<u>Counsel for Movant Arca S.G.R. S.p.A.</u>

Curtis Victor Trinko
Law Offices of Curtis V. Trinko, LLP
16 West 46th Street, Seventh Floor
New York, NY 10036

<u>Counsel for Movant Arkansas Teacher Retirement System</u>

Christopher J. Keller
Labaton Sucharow, LLP
140 Broadway
New York, NY 10005

<u>Counsel for Defendants</u>

Dorothy Jane Spenner

18

Sidley Austin LLP(NY)
787 Seventh Avenue
New York, NY 10019

19